# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3963 | **DATE** | 9/13/2001 |
| **CASE TITLE** | Derrick Hardaway vs. Donald S. Young | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. In accordance with Section 2254 and the Section 254 Rules, this Court therefore grants Hardaway's Petition. It determines that justice requires (see Section 2254 Rule 8(a) that unless the State of Illinois retries Hardaway within 120 days from the date of this opinion on the charge on which he was convicted, it shall release him from custody.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

number of notices

**SEP 1 4 2001**
date docketed

docketing deputy initials

9/13/2001
date mailed notice

SN courtroom deputy's initials

FOR DOCKETING

01 SEP 13 PM 4: 13

Date/time received in central Clerk's Office

SN mailing deputy initials

Document Number

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ex rel. )
DERRICK HARDAWAY #K65596, )
)
Petitioner, )
)
v. )   No.  01 C 3963
)
DONALD S. YOUNG, WARDEN, )
)
Respondent. )


DOCKETED
SEP 1 4 2001

<u>MEMORANDUM OPINION AND ORDER</u>

On May 29, 2001 Derrick Hardaway ("Hardaway") filed a
Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C.
§2254[1] to challenge his November 1, 1996 first-degree murder
conviction on which he is currently serving a 45-year sentence.
In accordance with Rule 4 of the Rules Governing Section 2254
Cases in the United States District Courts ("Section 2254
Rules"), this Court promptly reviewed the Petition and its
attachments.

That threshold review prompted the issuance of a June 4
memorandum order because the Petition posed issues that could not
be evaluated from that filing alone.  That being so, this Court
(1) ordered Warden Donald Young ("Respondent") to file a
responsive pleading in accordance with Section 2254 Rule 4 and
(2) appointed Thomas Geraghty, Esq. to act pro bono publico as

---

[1]     All further references to Title 28's provisions will
simply take the form "Section--."

Hardaway's counsel.[2]  Then, after reviewing Respondent's Answer

to the Petition and accompanying Exhibits (cited "Ex. --"), this

Court found that a reply memorandum was required.  That is now in

hand.

All of the filings to date have made it clear that the

Petition is amenable to disposition on those papers, without the

need for an evidentiary hearing (see Section 2254 Rule 8(a)).

For the reasons stated in this memorandum opinion and order,

Hardaway's Petition is granted.

### Facts

Under Section 2254(e)(1) the state court's findings of fact

are presumptively correct in any federal habeas proceeding.

Accordingly, this opinion draws from the recitation of the facts

in the Illinois Appellate Court's direct review of Hardaway's

conviction, reported at 307 Ill. App. 3d 592, 594-603, 718 N.E.2d

682, 685-91 (1st Dist. 1999).  Because that opinion's factual

recitation is understandably much more extensive and intermingles

matters relevant to the current inquiry with facts bearing on

Hardaway's trial and conviction, what follows is a distillation

of the currently relevant facts rather than (as this Court has

done in other habeas cases) a verbatim reproduction of the

---

[2]  Indeed, attorney Geraghty had not only handled all of
Hardaway's state court proceedings but had also prepared the
memorandum of law accompanying the form Petition (even though the
filing was nominally made pro se).

2

Appellate Court's statement.

At 8 a.m. on September 1, 1994 three Chicago police detectives went to Hardaway's home to question him (he was then 14 years old) and his brother Cragg (who was then age 16) in connection with the death of 11-year-old Robert Sandifer ("Sandifer") the night before. Encountering Hardaway's father, the detectives explained that they had information that his sons had been seen with Sandifer shortly before his murder. Hardaway's father woke him and brought him to the living room to talk with the detectives (Cragg was not then at home).

Hardaway agreed to accompany the detectives to the police station to help with the investigation. Although the detectives offered to give Hardaway's father a ride to the station along with Hardaway, the father declined in order to wait at home for his other son.[3] Before they left, the detectives gave Hardaway's father their card and phone number and told him the location of the police station. At that time the detectives did not read Hardaway his _Miranda_ rights or tell him that he was a suspect.

Two detectives interviewed Hardaway shortly after he arrived at the police station at about 8:30 a.m. Hardaway was still not read his _Miranda_ rights. In that interview Hardaway admitted he

---

[3] At trial Mr. Hardaway testified that the police had refused to permit him to accompany his son to the station. Because the trial court made a finding of fact rejecting that testimony, a finding that the Appellate Court upheld, the version set out in the text here controls.

knew Sandifer but said that he had not seen Sandifer for three days. Detectives then interviewed Jimesia Cooper, a neighbor of Hardaway's, who said that Hardaway had left her house the night before in the company of Michael Griffin and Sandifer. Sandifer's body had been found an hour after Cooper said they had left her house.

At about 10:30 a.m. detectives questioned Hardaway for the second time. Hardaway repeated that he had not seen Sandifer for three days. Hardaway was then informed of his Miranda rights and advised that if he was charged in the case he could be transferred from juvenile court and tried and sentenced as an adult. After the detectives confronted Hardaway with Cooper's statements, Hardaway said that the previous night his brother Cragg had told him to go get Sandifer and that Cragg then drove off with Sandifer alone, leaving Hardaway and Griffin behind. At that point Hardaway was placed under arrest. Detectives neither notified Hardaway's parents that Hardaway was under arrest nor communicated with a youth officer.

Throughout the day detectives repeatedly went to the Hardaway home in search of Cragg Hardaway. While there detectives spoke with Hardaway's parents, who continued to remain at home waiting for their other son. Hardaway's parents phoned the police station twice (at noon and at 8 p.m.) to inquire about Hardaway.

Detectives first requested a youth officer for Hardaway at
about 4 p.m., fully 9 hours after he had been taken into the
station and 5-1/2 hours after his arrest.  No youth officer was
assigned at that time, however.

At 4:30 p.m. detectives began a third interview of Hardaway,
though still with no youth officer present.  Detective McCann
again read Hardaway his Miranda rights and advised him that if he
was charged he could be tried as an adult.  McCann then told
Hardaway that Griffin had contradicted Hardaway's story, and he
took Hardaway to a room where he could see that Griffin was at
the station.  Hardaway then admitted (1) having gotten into the
car with Sandifer and his brother Cragg and (2) that he had been
present when Cragg shot Sandifer shortly thereafter.

At 7 p.m. Detective McCann interrogated Hardaway again, this
time accompanied by Assistant State's Attorney Theresa Harney
("Harney").  For the first time Youth Officer Geraci ("Geraci")
was also present.  Harney explained to Hardaway that Geraci was a
youth officer and that he was present "as an observer to assist
[Hardaway] if he had any questions or any problems."  Geraci
asked Hardaway if there was anything he could assist him with,
and Hardaway told him "no."  Harney read Hardaway his Miranda
rights and had Hardaway explain to her what his rights meant.
Harney also told Hardaway that if he was charged in connection
with the murder of Sandifer he could be tried and sentenced as an

5

adult.  Hardaway then repeated his 4:30 p.m. admissions.  Geraci observed Hardaway and said later that the latter was not intimidated or abused in any way, but he made no effort to speak with Hardaway alone.

Finally, at 10:45 p.m. Hardaway (who had then been in custody over 14 hours and had been under arrest for the last 12 hours of that period) began to give a 22-page court-reported statement in the presence of McCann, Geraci and Harney.  Hardaway gave a full confession to his participation in the murder, completing his statement at midnight.

### Procedural History

On December 6, 1994 the Juvenile Division of the Circuit Court of Cook County granted the State's petition to prosecute Hardaway as an adult (Ex. A-16 at 25).  Before trial Hardaway moved to quash his arrest, to suppress any evidence obtained as a result of the arrest and to suppress his inculpatory statements on the ground that they were involuntary.  Denying those motions, the trial court found that the police had probable cause to arrest and that Hardaway's statements were voluntarily given under the totality of the circumstances.  In the ensuing jury trial Hardaway was found guilty of the first-degree murder of Sandifer and sentenced to 45 years in prison.  Hardaway's court-reported confession provided key evidence of his role in the crime.

6

After his jury trial and sentencing, Hardaway appealed his conviction to the Illinois Appellate Court. On September 10, 1999 his conviction was affirmed in the earlier-cited published opinion and an accompanying unpublished Rule 23 order (Ex. D).

Hardaway next filed a Petition for Leave To Appeal to the Illinois Supreme Court (Ex. E). Leave was denied in that court's Docket No. 88421 on May 31, 2000 in the typical one-sentence order (Ex. F, reported in table at 189 Ill. 2d 668, 731 N.E.2d 767). That final disposition renders this May 29, 2001 Petition timely under the one-year limitation period prescribed by Section 2244(d)(1)(A).

Hardaway's Petition advances only one contention that he claims entitles him to federal habeas relief, asserting that his Fifth Amendment right[4] to be free from compelled self-incrimination was violated when involuntary statements were used against him at trial. Hence this opinion focuses on the voluntariness or involuntariness of those statements in constitutional terms.

<u>Procedural Framework</u>

Before any federal court can address the merits of a Section

---

[4] As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to the underlying Bill of Rights provision (which of course imposes limitations only on the federal government) rather than the Fourteenth Amendment (which applies to state actors and has been construed to embody such Bill of Rights guaranties).

2254 petition, the petitioner must have both exhausted his state court remedies and avoided any fatal procedural defaults (Section 2254(b)(1); Bocian v. Godinez, 101 F.3d 465, 468 (7th Cir. 1996)). Here there is no question as to Hardaway's satisfaction of the first of those requirements, for he "g[a]ve the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" (O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)).

That being so, this opinion turns to the separate doctrine of procedural default. Procedural default occurs in one of two situations: Either (1) a petitioner failed to present the federal constitutional issue fairly to the state courts before raising it in the federal habeas proceedings (Spreitzer v. Schomig, 219 F.3d 639, 644-45 (7th Cir.2000)) or (2) the state court rejected the claim on an independent and adequate state law ground (Coleman v. Thompson, 501 U.S. 722, 729 (1991)). If barred on procedural default grounds, a claim will not be cognizable in federal habeas proceedings unless the petitioner can clear one of two hurdles established by Coleman, id. at 750:

> [T]he prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Any claims that manage to survive those threshold and

8

intricate procedural obstacles must then satisfy Section 2254's

stringent standards for granting habeas relief on claims that

state courts have considered and rejected on their merits.  Here

is Section 2254(d):

> An application for a writ of habeas corpus on behalf of
> a person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim
> that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to,
> > or involved an unreasonable application of,
> > clearly established Federal law, as determined by
> > the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light
> > of the evidence presented in the State court
> > proceeding.

Williams v. Taylor, 529 U.S. 362, 402-13 (2000) has recently

provided the definitive parsing of the dual standard embodied in

Section 2254(d)(1):  To succeed, a petitioner must show either

(a) that the state court applied a rule contradicting Supreme

Court precedent that was clearly established as of the time the

state conviction became final or (b) that the state court

unreasonably applied a clearly established Supreme Court

principle to the facts of petitioner's case (see also Washington

v. Smith, 219 F.3d 620, 627-28 (7th Cir. 2000)).

### Procedural Default

As already stated, Hardaway's sole asserted ground for

federal habeas relief is that he was denied his Fifth Amendment

rights when involuntary statements were used against him at trial
(H. Mem. 1).[5]  As a preliminary matter, Respondent has argued
that Hardaway procedurally defaulted his claim as to his 10:30
a.m. and 4:30 p.m. statements under the independent-and-adequate-
state-law-ground rule.[6]

Although Hardaway made a pretrial motion to suppress all of
his statements and raised that issue again in a motion for a new
trial after the verdict, the Illinois Appellate Court found that
Hardaway had waived any challenge to the voluntariness of those
statements on appeal.[7]  Applying <u>People v. Enoch</u>, 122 Ill.2d 176,
186, 522 N.E.2d 1124, 1130 (1988), the Appellate Court concluded
that under Illinois law both an objection at trial and a written
post-trial motion are necessary to preserve a claimed trial court
error for review.  Thus the court ruled that Hardaway had waived
any challenge to his 10:30 a.m. and 4:30 p.m. statements by
failing to object during the trial to testimony regarding those

---

[5]  Because his memorandum of law accompanying his Petition
lacks pagination, this Court has numbered its pages beginning
with the first page following the still-unnumbered cover page.

[6]  Hardaway does not challenge the voluntariness of his 8:30
a.m. statement.

[7]  What was really meant, of course, was that Hardaway had
forfeited (not waived) his right to advance such a challenge--
there was surely nothing voluntary about any claimed surrender of
that right on his part (see, e.g., the discussion in <u>United
States v. Cooper</u>, 243 F. 411, 415-16 (7th Cir. 2001)).  But this
opinion will adhere, as most cases do, to the common (though
inexact) usage that employs "waiver" to describe the loss of a
right to assert a legal argument.

statements. Waiver is an independent and adequate state procedural ground for dismissal (<u>Aliwoli v. Gilmore</u>, 127 F.3d 632, 634 (7th Cir. 1997)).

Federal courts are generally bound by a state court's finding of waiver under its own law (<u>White v. Peters</u>, 990 F.2d 338, 340 (7th Cir. 1993)). If a state ground is not followed strictly, it will still be respected as long as it is "solidly established" (<u>Prihoda v. McCaughtry</u>, 910 F.2d 1379, 1384 (7th Cir. 1990), quoted in <u>White</u>). But an "infrequently, unexpectedly, or freakishly" applied state procedural bar does not constitute an "adequate" basis for precluding habeas review (<u>id</u>. at 1383; see also <u>Johnson v. Mississippi</u>, 486 U.S. 578, 587 (1988)). When a state court "chooses to ignore the fact that the petitioner has fully complied with the state's articulated procedural rules and simply deems the petitioner's claim waived," federal courts are not bound by the state court's finding of waiver (<u>Williams v. Lane</u>, 826 F.2d 654, 660 (7th Cir. 1987)).

Illinois does not have a "solidly established" rule requiring defendants to object during the trial to the admission of a confession when--as was done here--they have already raised the issue in a pretrial motion to suppress. <u>Enoch</u>, the case cited by the Illinois Appellate Court, does not really address

that issue as such.[8]  People v. Miles, 188 Ill.App.3d 471, 480, 544 N.E.2d 986, 992-93 (1st Dist. 1989)(citations omitted and emphasis added)--issued post-Enoch and expressly referring to that decision--explains Illinois waiver law as to the admission of confessions:

> The failure to challenge the admission of a confession at trial either by a motion to suppress or by appropriate objection at trial and then by a post-trial motion generally waives appellate review of the matter. Additionally, a defendant must normally challenge the voluntariness of a confession by a motion to suppress which, under Illinois law, must "be made before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion."

Miles thus teaches that a defendant who raises the voluntariness of his confession in both a pretrial motion to suppress and a post-trial motion for a new trial, though not by an objection at trial, has preserved the issue for appellate review.  That principle, which recognizes the procedural equivalence of a pretrial motion to suppress and an objection on the same ground during trial, is well settled in Illinois law (see, e.g., People v. Taylor, 33 Ill. 2d 417, 421, 211 N.E. 2d 673, 675 (1965); People v. Calderon, 101 Ill. App. 3d 469, 477, 428 N.E. 2d 571, 576 (1st Dist. 1981); People v. Hall, 40 Ill. App. 3d 56, 61, 351 N.E.2d 639, 643 (1st Dist. 1976)).

---

[8]  In Enoch, 122 Ill. 2d at 185-87, 522 N.E. 2d at 1129-30 the defendant objected at trial to the admission of certain evidence, but he did not also comply with the Illinois statutory requirement that he file a post-trial motion raising that issue.

By finding that Hardaway waived the right to appeal because he did not object during the trial, the Illinois Appellate Court flew in the face of those firmly grounded precedents--which, it should be repeated, were confirmed post-<u>Enoch</u> in the <u>Miles</u> case. Nor did the court acknowledge that well-established line of authority and say that it had decided that the law should be changed--and even had it done so, it could not of course be said to be applying a "solidly established" procedural bar (quite the contrary). This Court therefore holds that Hardaway did not procedurally default the issue of the voluntariness of his 10:30 a.m. and 4:30 p.m. statements.

So there is no question that Hardaway has preserved his claim for federal habeas review by having raised the issue of his statements' claimed involuntariness at every appropriate stage of the state court proceedings. This opinion proceeds to the merits of Hardaway's claims.

<u>Involuntariness of the Challenged Statements</u>

To that end this Court looks to the earlier-quoted Section 2254(d)(1) dichotomy as explicated in <u>Williams</u>, 529 U.S. at 402-13. Here the Illinois courts satisfied one branch of that analysis by having applied the correct rule regarding voluntariness as derived from Supreme Court precedent. It is well-established that the voluntariness of all confessions, including those of juveniles, must be evaluated based on the

totality of the circumstances surrounding the confessions (<u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973); <u>Gallegos v. Colorado,</u> 370 U.S. 49, 55 (1962)). And the Court has long recognized the need to exercise "special caution" when assessing the voluntariness of juvenile confessions (<u>In re Gault</u>, 387 U.S. 1, 45 (1967)). Among the factors the Court has looked to for that purpose are the youth of the accused, his or her education and prior experiences with the criminal justice system, the length of detention, whether the questioning is repeated or prolonged and the presence or absence of a parent, lawyer or other friendly adult during an interrogation (<u>Schneckloth</u>, 412 U.S. at 226; <u>Gallegos</u>, 370 U.S. at 54-55; <u>Haley v. Ohio</u>, 332 U.S. 596, 599-600 (1948)).

In evaluating Hardaway's statements the Illinois courts did indeed speak of a totality-of-circumstances approach, stating that they weighed Hardaway's age and the length of the repeated interrogations by relays of detectives against his previous experiences with the criminal justice system,[9] his professed understanding of his <u>Miranda</u> rights and the presence of a youth officer during the later interrogations. In those terms the trial court determined that Hardaway's statements were voluntary, and the Illinois Appellate Court affirmed.

---

[9] Those prior contacts included 12 court referrals for delinquency, 3 other court referrals adjusted in Complaint screening and 7 station delinquencies.

Because the Illinois courts thus applied the right rule in evaluating the voluntariness of his statements, Hardaway's entitlement to habeas relief hinges on his ability to demonstrate that the state courts applied that rule unreasonably. On that score Hardaway urges that his youth, the length of the repeated interrogations and the absence of a parent or effective adult advisor render his statements involuntary under United States Supreme Court precedents.[10] That contention requires an analysis of the earlier Supreme Court cases dealing with juvenile confessions.

More than a half century ago <u>Haley</u>, 332 U.S. at 599-600 found involuntary the confession of a 15-year-old obtained after five hours of late-night interrogation outside of the presence of his mother or an attorney:

> [W]hen, as here, a mere child--an easy victim of the law--is before us, special care in scrutinizing the record must be used. Age 15 is a tender and difficult age for a boy of any race. He cannot be judged by the more exacting standards of maturity. That which would leave a man cold and unimpressed can overawe and overwhelm a lad in his early teens. This is the period of great instability which the crisis of adolescence produces. A 15-year old lad, questioned through the dead of night by relays of police, is a ready victim for the inquisition. Mature men possibly might stand

---

[10] Hardaway also alleges that one of the detectives abused him during questioning and that the detectives frustrated his parents' attempts to confer with him before the interrogations, but the trial court resolved those factual issues against him. Hardaway has not rebutted the presumption of correctness of the trial court's determination by clear and convincing evidence, so this Court will not overturn those findings (Section 2254(e)(1)).

the ordeal from midnight to 5 a.m. But we cannot
believe a lad of tender years is a match for the police
in such a contest. He needs counsel and support if he
is not to become the victim first of fear, then of
panic. He needs someone on whom to lean lest the
overpowering presence of the law, as he knows it, crush
him. No friend stood at the side of this 15-year-old
boy as the police, working in relays, questioned him
hour after hour, from midnight until dawn. No lawyer
stood guard to make sure that the police went so far
and no farther, to see to it that they stopped short of
the point where he became the victim of coercion. No
counsel or friend was called during the critical hours
of questioning.

Nor did Haley, id. at 601 find convincing the prosecution's

argument that the youth's confession was voluntary because he had

been informed of his constitutional rights:

But we are told that this boy was advised of his
constitutional rights before he signed the confession
and that, knowing them, he nevertheless confessed.
That assumes, however, that a boy of fifteen, without
aid of counsel, would have a full appreciation of that
advice and that on the facts of this record he had a
freedom of choice. We cannot indulge those
assumptions. Moreover, we cannot give any weight to
recitals which merely formalize constitutional
requirements. Formulas of respect for constitutional
safeguards cannot prevail over the facts of life which
contradict them. They may not become a cloak for
inquisitorial practices and make an empty form of the
due process of law for which free men fought and died
to obtain.

Gallegos, 370 U.S. at 54 again addressed the need for

friendly adult counsel during juvenile confessions, holding

involuntary the confession of a 14-year-old who was prevented

from seeing his mother, an attorney or any other friendly adult

during five days of detention:

The prosecution says that the boy was advised of his

right to counsel, but that he did not ask either for a lawyer or for his parents. But a 14-year-old boy, no matter how sophisticated, is unlikely to have any conception of what will confront him when he is made accessible only to the police. That is to say, we deal with a person who is not equal to the police in knowledge and understanding of the consequences of the questions and answers being recorded and who is unable to know how to protect his own interests or how to get the benefits of his constitutional rights.

Gallegos, id. (emphasis added) then continued:

He would have no way of knowing what the consequences of his confession were without advice as to his rights--from someone concerned with securing him those rights--and without the aid of more mature judgment as to the steps he should take in the predicament in which he found himself. A lawyer or an adult relative or friend could have given the petitioner the protection which his own immaturity could not. Adult advice would have put him on a less unequal footing with his interrogators. Without some adult protection against this inequality, a 14-year-old boy would not be able to know, let alone assert, such constitutional rights as he had. To allow this conviction to stand would, in effect, be to treat him as if he had no constitutional rights.

Next Gault, 387 U.S. at 55 held involuntary the confession of a 15-year-old who had not been advised of his constitutional rights and was interrogated in the absence of a parent, attorney, or other friendly adult:

We conclude that the constitutional privilege against self-incrimination is applicable in the case of juveniles as it is with respect to adults. We appreciate that special problems may arise with respect to waiver of the privilege by or on behalf of children, and that there may well be some differences in technique--but not in principle--depending on the age of the child and the presence and competence of parents. The participation of counsel will, of course, assist the police, Juvenile Courts and appellate tribunals in administering the privilege. If counsel

17

was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright, or despair.

Neither time nor intervening caselaw has attenuated, let alone vitiated, the combined force of <u>Haley</u>, <u>Gallegos</u> and <u>Gault</u>.[11] This Court finds unreasonable the state court's finding that Hardaway's 10:30 a.m. and 4:30 p.m. statements were voluntary under the totality of the circumstances. Neither Hardaway's parents nor an attorney nor a youth officer was present during the first 10 hours of this 14-year-old's interrogations to provide "counsel and support" and protect him from becoming "the victim first of fear, then of panic" (<u>Haley</u>, 332 U.S. at 600). Even younger than the defendant in <u>Haley</u> and interrogated twice as long, Hardaway confessed his part in the murder to a police detective while entirely alone--with no friendly adult present.

While to be sure Hardaway had been read his <u>Miranda</u> rights and given a juvenile warning before making those statements, the

---

[11]   Hardaway's circumstances are clearly distinguishable from those in <u>Fare v. Michael C.</u>, 442 U.S. 707, 726-27 (1979), in which the Court found voluntary the statements made by a 16-1/2 year old with several prior convictions after a brief police interrogation, despite the absence of friendly counsel. Importantly, paralleling the cases discussed in the text, Hardaway was two years younger than the defendant in <u>Fare</u>, had no prior convictions and was subjected to over 10 hours of repeated interrogations.

detective made no effort at all to assess whether Hardaway truly understood the nature of his rights. Hardaway's youth, the repeated and prolonged nature of the questioning and the lack of any friendly counsel render his 10:30 a.m. and 4:30 p.m. statements involuntary under the totality of the circumstances. So those statements should have been suppressed, and the Illinois courts' failure to do so represents an unreasonable application of Supreme Court precedent within the meaning of Section 2254(d)(1) as expounded upon in Williams v. Taylor.

That leaves for consideration only the question whether the presence of Youth Officer Geraci during the later 7 p.m. and 10:45 p.m. statements sufficed to render those statements voluntary under the totality-of-the-circumstances test despite the involuntariness of Hardaway's earlier statements. Once again this Court finds the Illinois courts' affirmative conclusion is fatally flawed.

Whether a self-inculpatory statement that follows an involuntary statement of the same nature can nonetheless be considered voluntary depends in large part upon whether there is a "break in the stream of events...sufficient to insulate the statement from the effect of all that went before" (Clewis v. Texas, 386 U.S. 707, 710 (1967)).[12] In determining the

---

[12] Clewis, id. held involuntary a confession that occurred five days following a prior concededly involuntary confession, during which time the defendant was held in the county jail but

sufficiency of an intervening break, courts look to such factors as the time that elapsed between confessions, whether the interrogations took place in the same location and whether the identity of the interrogators changed between the interrogations (Oregon v. Elstad, 470 U.S. 298, 310 (1985))."[13]  See also Westover v. United States, a lesser-known case decided together with Miranda v. Arizona, 384 U.S. 436, 494-96 (1966).[14]

This Court finds under the totality of the circumstances that the taint from Hardaway's 4:30 p.m. involuntary confession had not dissipated by the time of his 7 p.m. and 10:45 p.m. confessions.  Although the interrogators renewed the Miranda and juvenile warnings, the place of the interrogation remained the same and no really appreciable period of time had elapsed since the end of the 4:30 p.m. interrogation, during which Hardaway had given a full account of his involvement in the crime--certainly not enough to "insulate the statement from the effect of all that went before."  In that respect it is noteworthy that Detective

_____

was not subjected to any intervening interrogation.

[13]  Elstad, id. at 1314 held voluntary a confession obtained after a proper waiver of the defendant's rights despite the fact that the police had obtained an earlier voluntary, but unwarned, admission from the defendant.

[14]  Westover, id. held involuntary a confession obtained by FBI agents who, though they warned the defendant of his rights, interrogated him in the same location as, and immediately following, a 14-hour interrogation by the local police, who had not given defendant any like warning of rights.

McCann, who had elicited the 4:30 p.m. confession from Hardaway, continued to be present during the later confessions.

Importantly, Geraci (though present as an almost totally passive observer) wholly failed to fulfill the role of a friendly adult during the 7 and 10:45 p.m. interrogations, providing the 14-year-old Hardaway with none of the counsel needed to ensure that he had a full appreciation of the potential consequences of making a statement. Although Hardaway did recount to Harney his understanding of the rights warning and did not ask for either his parents or an attorney, that did not relieve Geraci of his responsibilities. Geraci made no affirmative effort to provide counsel to the 14-year-old, instead merely saying with the interrogators present that he was there to do anything he could for Hardaway. Geraci never even tried to speak to Hardaway in private, nor did he make any attempt to assess whether Hardaway understood his constitutional rights or wanted to talk to his parents or an attorney. To be properly effective, a friendly adult does not wait passively for a juvenile to voice a need for help--instead such an adult acts affirmatively to protect the juvenile's interests, because the very need for a friendly adult is grounded in the recognition that a juvenile lacks the experience or maturity to do so on his or her own (see Gallegos, 370 U.S. at 54).

Hence this Court holds that the mere presence of Geraci,

21

without undertaking a single affirmative act to protect Hardaway's rights and interests, does not render the 7 p.m. and 10:45 p.m. statements voluntary--coming as they did hard on the heels of the earlier involuntary confessions obtained from Hardaway. Any finding that Geraci's passive presence sufficed to insulate Hardaway's later statements from the earlier involuntary statements would unreasonably flout the standard articulated by the Supreme Court's <u>Clewis</u> decision. Because the state court determination regarding the voluntariness of Hardaway's later inculpatory statements was thus also unreasonable, Hardaway has demonstrated his entitlement to a writ.

## Conclusion

In summary, 14-year-old Derrick Hardaway was subjected to repeated interrogations over the course of 16 hours in the absence of his parents, an attorney or other effective friendly counsel. Although Hardaway had some prior experience with the criminal justice system and although he professed to understand his constitutional rights, the totality of the circumstances-- particularly his youth, the length of the interrogation period and the absence of an <u>effective</u> friendly adult throughout that period (especially because the original tainted statements were elicited in the total absence of even a nominally friendly adult, and were then followed shortly by the token presence of an unhelpful though neutral adult observer)--rendered all of

Hardaway's statements involuntary under well-established United States Supreme Court precedent. Hence the Illinois courts applied the vital and dispositive Supreme Court precedents unreasonably in finding Hardaway's statements to have been voluntary.

As stated earlier, Hardaway's constitutionally violative self-incriminatory statements were critical to his conviction. Their admission rendered his trial fundamentally unfair--and there is no way to evaluate what the verdict would have been if the well had not been poisoned by the jury's exposure to and consideration of those statements.

In accordance with Section 2254 and the Section 2254 Rules, this Court therefore grants Hardaway's Petition. It determines that justice requires (see Section 2254 Rule 8(a)) that unless the State of Illinois retries Hardaway within 120 days from the date of this opinion on the charge on which he was convicted, it shall release him from custody.

_____
Milton I. Shadur
Senior United States District Judge

Date:  September 13, 2001

23